IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KENNETH LEE COMBS and CUSTOM QUALITY CARPENTRY LLC d/b/a CQC Home,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>LANE BOLAND and REMODELER LAUNCH LLC d/b/a Remodel Commander,<br><br>　　　　　　Defendants. | 1:24CV509 |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

　　　This case is before the court on a motion for default judgment by Plaintiffs Kenneth Lee Combs and Custom Quality Carpentry LLC ("CQC") (Doc. 11) and a motion to set aside default by Defendant Remodeler Launch LLC ("Remodeler") (Doc. 18). These motions have been fully briefed. (Docs. 12, 19, 20, 22.) Remodeler's answer also seeks to dismiss Plaintiffs' case pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 17), but no separate brief in support has been filed. For the reasons that follow, Remodeler's motion to set aside will be granted, Remodeler's motion to dismiss will be denied, and Plaintiffs' motion for default judgment will be denied as moot.

## I. BACKGROUND

Plaintiffs commenced this suit against Defendants Lane Boland and Remodeler on June 21, 2024. (Doc. 1.) In brief, Plaintiffs allege that Combs, a citizen of North Carolina and owner of CQC, entered into an oral agreement with Boland, a citizen of Puerto Rico, to found Remodeler as equal member-managers. (Id. ¶¶ 1-2, 4, 15.) However, according to Plaintiffs, Boland failed to list Combs as a member-manager of Remodeler and never provided him with his share of Remodeler's profits. (Id. ¶¶ 17-19). After the termination of the business relationship between Combs and Boland, Plaintiffs allege that Boland nevertheless held himself out as an officer of CQC and used CQC's mark in connection with Remodeler's website. (Id. ¶¶ 21-23.) Accordingly, Plaintiffs bring nine causes of action: (1) breach of contract; (2) breach of implied partnership contract; (3) fraud; (4) unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1 et seq.; (5) common law trademark infringement; (6) common law unfair competition; (7) civil conspiracy; (8) conversion; and (9) breach of fiduciary duty. (Id. ¶¶ 25-85.)

On July 9, 2024, Plaintiffs served Remodeler's registered agent with the summons and a copy of the complaint.[1] (Doc. 19 at

---

[1] Plaintiffs encountered multiple challenges in their effort to serve Boland individually. The magistrate judge ultimately granted Plaintiffs' motion for service of Boland by publication, so long as service by publication occurred before August 14, 2025. (Doc. 10.) Boland has now been served and filed an answer. (See Doc. 23.)

2; Doc. 20 at 2.) However, Remodeler failed to file an answer or any other motion in response to Plaintiffs' complaint. (Doc. 20 at 2.) The magistrate judge consequently directed the clerk of court to enter a default, which was done on April 16, 2025. (Doc. 8.) On May 16, 2025, the magistrate judge then ordered Plaintiffs to file any motion for default judgment as to Remodeler by June 9, 2025.

Plaintiffs timely filed their motion for default judgment on June 9, 2025. (Doc. 11.) About two weeks later, Remodeler's attorney filed his notice of appearance. (Doc. 13.) Remodeler then quickly filed a motion for an extension of time to file its response to Plaintiffs' motion for default judgment (Doc. 14), which the court temporarily granted. On July 14, 2025, Remodeler finally filed both an answer to Plaintiffs' complaint (Doc. 17), which included a motion to dismiss, and a motion to set aside the default (Doc. 18). Plaintiffs responded (Doc. 20), and Remodeler replied (Doc. 22). The motions are now ready for decision.

II. ANALYSIS

   A.  Standard of Review

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set aside an entry of default for good cause." Indeed, the law generally disfavors resolution of claims by default. Tazco, Inc. v. Dir., Off. of Workers Comp. Program, U.S. Dep't of Lab., 895 F.2d 949, 950 (4th Cir. 1990). Thus,

3

"[a]ny doubts about whether relief should be granted should be resolved in favor of setting aside the default so the case may be heard on the merits." USF Ins. Co. v. Bullins Painting, Inc., No. 11CV410, 2012 WL 4462004, at *1 (M.D.N.C. Sept. 25, 2012) (quoting Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969)).

To determine whether good cause exists to set aside a default, district courts should consider (1) whether the moving party has a meritorious defense, (2) whether he acts with reasonable promptness, (3) the personal responsibility of the defaulting party, (4) the prejudice to the party, (5) whether there is a history of dilatory action, and (6) the availability of sanctions less drastic. See Payne ex rel. Est. of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006). These factors are to be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments," Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987) (quoting Tolson, 411 F.2d at 130), as the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits," Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010).

- B. **Whether Remodeler Has Demonstrated Good Cause to Set Aside the Default**

First, Remodeler contends that it has offered a meritorious

4

defense in its answer and the declaration of Lane Boland. (Doc. 19 at 8-9; see Docs. 17, 18-1.) Specifically, Remodeler asserts it has proffered evidence that Combs never contractually or impliedly acquired any status or related rights as a member-manager of Remodeler. (Doc. 22 at 2.) In support, Remodeler provides a copy of what it characterizes as the only operative contract between Boland and Combs. (See Doc. 17-1; Doc 17 ¶ 15.) Remodeler also argues it had permission to use CQC's mark. (Doc. 22 at 2.) Plaintiffs respond that Remodeler cannot demonstrate the existence of a meritorious defense through conclusory statements in an unverified complaint and declaration. (Doc. 20 at 7-8.)

As Remodeler correctly asserts, "all that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court of the jury to find for the defaulting party." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). Remodeler need not establish a meritorious defense by a preponderance of the evidence. Terry v. Swift Transp., No. 16CV256, 2017 WL 4236923, at *3 (M.D.N.C. Sept. 22, 2017) (citing Cent. Operating Co. v. Util. Workers of Am., 491 F.2d 245, 252 n.8 (4th Cir 1974)). Here, it has done enough by simply proffering specific facts to suggest that the merits outcome would be "contrary to the result achieved by the default." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d

5

808, 812 (4th Cir. 1988) (quoting 10 Wright & Miller's Federal Practice & Procedure § 2697 (2d ed. 1983)).  There is no additional requirement that Remodeler rely only on facts or allegations from verified pleadings.

Second, whether a party has taken reasonably prompt action to set aside the entry of default "must be gauged in light of the facts and circumstances of each occasion."  Moradi, 673 F.2d at 727.  As Remodeler correctly notes, "this factor primarily considers the lapse in time between the entry of default, or discovery of such entry, and the moving party's efforts to set aside the entry of default."  Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am., No. 10CV45, 2010 WL 11700299, at *5 (E.D. Va. Apr. 15, 2010).

Here, approximately two and a half months elapsed from when Plaintiffs allege Remodeler confirmed its awareness of the default and when Remodeler filed its answer and motion to set aside default.  (See Doc. 20 at 2.)  However, approximately one month of this delay appears at least partly attributable to Remodeler's attorney, as he was retained on June 11, 2025, before he embarked on a planned vacation and then was engaged in a trial in Rowan County Superior Court.  (Doc. 14 ¶¶ 1-2, 6.)  While counsel should act as soon as possible to set aside a default, this delay is not so long as to cause Remodeler to suffer for it.  Given these facts

6

and the proffer of a meritorious defense, the delay is not so significant as to favor an entry of default.

Third, "[w]here a party's own action or inaction is the source of the default, th[e personal responsibility] factor weighs against setting aside entry of default." Lindemann-Moses v. Jackmon, 644 F. Supp. 3d 163, 179 (M.D.N.C. 2022). Here, there is no dispute that Remodeler is personally responsible for its own default, as it failed to respond to Plaintiffs' complaint or even retain a North Carolina-based attorney for approximately one year after effective service of process. Remodeler admits that Boland, its member-manager, struggled to stay on top of his email communications and lacked an understanding of the notification procedure when a party is served through its registered agent. (Doc. 19 at 3; Doc. 19-1 ¶¶ 15, 19.) Boland partially attributes these oversights to post-traumatic stress disorder and other mental health conditions that stem from his military service in Operation Iraqi Freedom, where he was wounded in combat. (Doc. 19 at 2; Doc. 19-1 ¶¶ 5-8.) Even so, the court agrees that Boland bears the responsibility for Remodeler's default, and the third factor therefore weighs in favor of Plaintiffs.

Fourth, in determining any prejudice to Plaintiffs if the default were set aside, "delay in and of itself does not constitute prejudice to the opposing party." Colleton, 616 F.3d at 418. "[N]o cognizable prejudice inheres in requiring a plaintiff to

7

prove a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." Id. at 419. Rather, courts consider whether prejudice results because of issues like "[a] missing witness in the case where testimony was made unavailable by the delay, . . . any records made unavailable by the delay, . . . [or] any evidence for the plaintiff which could have been presented earlier, the presentation of which was prevented by the delay." Lolatchy, 816 F.2d at 952. Here, Plaintiffs have not persuasively advanced any tangible prejudice beyond mere delay. Instead, they assert broadly that further delay would provide an enhanced opportunity for fraud and continued loss of profits. (Doc. 20 at 9-10.) But such potential prejudice is partly inherent in the time it takes any action to be litigated in the normal course, and so this factor also weighs in favor of setting aside the entry of default.

Fifth, the Fourth Circuit examines a party's "history of dilatory action" apart from the delay causing the default itself. See, e.g., Colleton, 616 F.3d at 418. Here, as already discussed, Remodeler proceeded with reasonable promptness once it was made aware of the entry of default. Much of the delay resulted from the pre-scheduled commitments of Remodeler's attorney. Nevertheless, as evidence of dilatory action, Plaintiffs point to the emailed offer by Remodeler's attorney to accept service on behalf of Boland individually in exchange for Plaintiffs' support

8

in setting aside the entry of default. (Doc. 20 at 11; Doc. 20-1 at 1.) However, Remodeler's attorney otherwise had no legal obligation to accept service on behalf of Boland, and the court will not favor entry of default on this basis.

Sixth, as to less drastic sanctions, Remodeler argues that the court may impose costs, attorney's fees, or "other potential remedies." (Doc. 19 at 15.) Plaintiffs respond that, based on the evidence, the imposition of less onerous sanctions would not have led Remodeler to promptly cure its failure to respond. (Doc. 20 at 11.) Nevertheless, the court finds that less drastic sanctions – such as attorney's fees or costs associated with Plaintiffs' motion for default judgment and response to Remodeler's motion to set aside default – remain available in lieu of default.

In sum, the balance of the factors weighs in favor of finding "good cause" pursuant to Rule 55(c) to set aside the entry of default. See Vick v. Wong, 263 F.R.D. 325, 331 (E.D. Va. 2009) ("The Court is required to liberally construe the 'good cause' criteria and resolve all doubts in favor of setting aside default in order to allow the party against whom default has been entered to defend on the merits and avoid the 'extreme sanction' of default.").

9

**C. Whether Remodeler Has Effectively Moved to Dismiss Plaintiffs' Complaint**

Remodeler's answer, filed in July 2025, included a motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]  (See Doc. 17 at 1.)  However, pursuant to this district's Local Rules, "[a]ll motions, unless made during a hearing or at trial, shall be in writing and shall be accompanied by a brief" unless otherwise noted in Local Rule 7.3(j).  L.R. 7.3(a).  Notably, motions to dismiss are not excluded from this requirement by Local Rule 7.3(j).  Thus, because no brief was ever filed in support of Remodeler's motion to dismiss, Remodeler's motion to dismiss will be denied.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant Remodeler's motion to set aside entry of default (Doc. 18) is GRANTED, and Plaintiffs Combs and CQC's motion for default judgment (Doc. 11) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Remodeler's motion to dismiss (Doc. 17) is DENIED WITHOUT PREJUDICE.

November 7, 2025
/s/   Thomas D. Schroeder
United States District Judge

---

[2] In its entirety, Remodeler's motion states, "Remodeler moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the present action for failure to state a claim upon which relief may be granted."  (Doc. 17 at 1.)